*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FRANCISCO SALINAS,

      Plaintiff-Appellant,

v

JOANNE HAYES and MICHIGAN MILLERS
MUTUAL INSURANCE CO.,

      Defendant-Appellees.

UNPUBLISHED
May 6, 2021

No. 353882
Oakland Circuit Court
LC No. 2019-172135-NI

Before: GLEICHER, P.J., and BORRELLO and SWARTZLE, JJ.

PER CURIAM.

In this automobile negligence action, plaintiff appeals as of right the trial court order granting summary disposition in favor of defendants pursuant to MCR 2.116(C)(10). For the reasons set forth in this opinion, we reverse and remand for further proceedings.

## I. BACKGROUND

This case arises from a motor vehicle accident that occurred on April 28, 2016, in which defendant Joanne Hayes allegedly rear-ended plaintiff while plaintiff was driving his employer's vehicle. According to the police report, plaintiff complained of minor pain in his back at the scene of the accident but refused medical treatment at that time. On May 4, 2016, plaintiff sought medical treatment for head, neck, and shoulder pain at Oakwood Hospital and Medical Center. The provider notes indicate that plaintiff's chief complaint was a "Motor Vehicle Crash," that his pain had begun suddenly, and that his pain was constant and mild. Plaintiff informed a nurse that he attempted to go to work the previous day but was in too much pain. The record from this visit also indicates that plaintiff's medical history was reviewed and that there was "[n]o pertinent past medical history." X-rays revealed "degenerative disc findings" in the cervical spine, with no evidence of fracture or facet joint dislocation. Plaintiff testified during his deposition that he had never had right shoulder pain or back pain before the motor vehicle accident.

At some point, plaintiff returned to work but performed alternative duties and limited hours because of ongoing pain. On May 10, 2016, he was told to shovel mud or gravel at work and, according to plaintiff, he "injured [him]self worse." Plaintiff testified during his deposition that

-1-

he further hurt his right shoulder, on which he eventually had surgery performed, during the workplace shoveling incident. He also further injured his back during this incident. Plaintiff testified that he had not worked for any employer since this incident and that he received worker's compensation.

Plaintiff also sought medical treatment at Concentra on May 10, 2016. According to the record from the visit, plaintiff reported that the motor vehicle accident was the reason for seeking treatment. He complained of back, neck, head, and left ear pain. The record indicates that there was no past medical history contributing to his symptoms. Plaintiff visited Concentra again on May 11, 2016, reporting that he was involved in a motor vehicle accident and injured his upper, middle, and lower back. Plaintiff reported no prior functional restrictions. The record from this visit indicated that plaintiff had a cervical strain, lumbar strain, and strain of the thoracic region. Plaintiff returned to Concentra on May 18, 2016, complaining of continued soreness in his back and neck. The record from this visit indicates that plaintiff's pain was severe, that there was no radiation, and that there was no shoulder pain.

On June 8, 2016, plaintiff visited Dr. Walid Osta. According to this record, plaintiff complained of pain following a motor vehicle accident. Osta conducted a physical examination and diagnosed plaintiff with neck, thoracic, and lumbar sprains. On June 23, 2018, Dr. Michael Paley performed an MRI on plaintiff's lumbar spine and determined that there was mild levoscoliosis, straightening of the lumbar lordotic curve that could indicate muscular spasm, anterior spondylolisthesis, and foraminal stenosis. On July 12, 2016, Dr. Michael Paley performed an MRI on plaintiff's cervical spine and determined that plaintiff had bulging disc and hypertrophic bony changes resulting in foraminal stenosis and that there also was straightening of the cervical lordotic curve that could be consistent with either "patient positioning" or cervical muscular spasm.

On August 11, 2016, plaintiff underwent an electromyographic examination by Dr. Jack Belen at Mendelson Kornblum Orthopedic & Spine Specialists for "complaints of neck pain and pain and numbness into the upper extremities all the way to the fingers." The record from this visit reports that plaintiff's "problems began following a work related injury that occurred in April of 2016." Belen determined that plaintiff had bilateral cervical nerve root irritation and mild right carpal tunnel syndrome. Belen also conducted an electromyographic examination on August 18, 2016, regarding plaintiff's complaints of pain in his lower back and lower extremities. Belen determined that plaintiff had bilateral S1 nerve root irritation.

On November 2, 2016, a shoulder intake form for plaintiff was completed with Mendelson Kornblum indicating that he was seeking treatment for his right shoulder that was injured in the automobile accident on April 28, 2016. The form indicated that this condition prevented plaintiff from reaching high shelves, doing usual work, and lifting more than 10 pounds. The report completed by Dr. Stephen Mendelson, a board certified orthopedic surgeon, regarding this visit also indicates that plaintiff denied having any problem with his shoulder before the accident. Radiographic imaging revealed no fractures or dislocation in plaintiff's shoulder. The report also indicates a determination of "[b]ilateral shoulder concern for internal derangement." An MRI of plaintiff's right shoulder conducted by Paley at Silver Pine Imaging on November 3, 2016, found a partial-thickness tear in plaintiff's rotator cuff. An MRI of plaintiff's left shoulder conducted by

Paley at Silver Pine Imaging on November 3, 2016, the findings of which included a "SLAP 1 type tear of the superior labrum."

On November 17, 2016, plaintiff discussed ongoing pain in his back and lower extremities with Dr. Martin Kornblum at Mendelson Kornblum. The record indicates that plaintiff subsequently received chiropractic treatment for his neck, back, and shoulder.

On December 7, 2016, plaintiff was seen by Mendelson regarding plaintiff's shoulder issues. Mendelson wrote in his report that plaintiff had "sustained real injuries about the shoulders," was more symptomatic in the right shoulder, and that plaintiff would undergo physical therapy for both shoulders. Plaintiff visited Mendelson again on January 18, 2017, with continuing complaints of significant pain in his right shoulder, which was not alleviated by the recommended therapy. After discussing various options, Mendelson recommended shoulder arthroscopy. On February 24, 2017, Mendelson performed a surgical operation on plaintiff's shoulder. The operative report indicated that the preoperative diagnosis was a "[p]artial thickness tear of supraspinatus tendon" and that the postoperative diagnosis was a SLAP tear, biceps tendon tear, impingement, adhesion of the shoulder, and bursitis. During an April 19, 2017 visit with Mendelson, plaintiff reported that his right shoulder was feeling much better. On June 7, 2017, plaintiff complained of some numbness in his right arm, but he had full range motion of his shoulder.

On September 18, 2017, Dr. Brian Roth conducted a medical examination of plaintiff. Roth indicated that he was unable to review the shoulder imaging conducted by Silver Pine Imaging because the discs plaintiff brought to the examination would not open. Roth disagreed with Belen's August 11, 2016 determination that plaintiff had bilateral cervical nerve root irritation and mild right carpal tunnel syndrome because Roth concluded that there "were only isolated changes of the cervical paraspinal muscles, which is non-diagnostic." Roth concluded from his examination and review of plaintiff's medical records that there was "no evidence of ongoing injury or pathology" and that there was "no evidence of cervical, thoracic, or lumbar radiculopathy, or ongoing right shoulder pathology that would require ongoing treatment." Roth further opined that plaintiff "has no objective condition, from his motor vehicle accident at work, April 28, 2016, which was caused or significantly aggravated by his alleged work at Concrete Levelers, LLC," but plaintiff "has preexisting degenerative arthritis."

At a January 11, 2018 visit with Kornblum, plaintiff's neck and back pain were continuing to bother him. Kornblum's diagnosis was cervical and lumbar pain, as well as sacroiliitis.

Dr. Matthew Sardelli, a board certified orthopedic surgeon, examined plaintiff on March 13, 2018, and concluded from his examination and review of plaintiff's records that plaintiff had resolved cervical and lumbar spine strains, right shoulder symptoms that were unrelated to the motor vehicle accident, and bilateral carpal tunnel syndrome unrelated to the motor vehicle accident. Sardelli opined that plaintiff's right shoulder injuries were degenerative and not caused by the motor vehicle accident because he did not find them to be the type of injuries caused by a "rear-ending type motor vehicle accident." Although somewhat confusing, Sardelli further concluded both that the Silver Pine MRI of plaintiff's right shoulder did not show rotator cuff tearing and that the November 3, 2016 MRI of plaintiff's right shoulder demonstrated a partial-thickness tear to the rotator cuff and no SLAP tear.

Dr. Justin Rlutta performed a medical evaluation of plaintiff on April 30, 2018, that included a review of plaintiff's medical records. Rlutta concluded that plaintiff's "current diagnosis is cervical, thoracic, and lumbar spondylosis without evidence of any significant alteration related to his motor vehicle incident." He also concluded that "[a]ll clinical workups revealed degenerative changes without evidence of significant traumatic findings," that plaintiff sustained "soft tissue injuries" from the accident that should have resolved within six weeks, that suffering soft tissue injuries was consistent with plaintiff's actions of not seeking medical treatment until approximately seven days after the accident, and that there was "no indication that the shoulder surgery was indicated as the result of the motor vehicle incident." Additionally, Rlutta stated that plaintiff's "presentation at the time of my clinical assessment revealed widespread nonphysiological pain behaviors compatible with a fictitious disorder and gross malingering."

On February 27, 2019, plaintiff filed his complaint initiating this lawsuit. Plaintiff asserted one count of bodily injury liability against Hayes based on her alleged negligent driving, and he also sought uninsured and underinsured motorist benefits from Michigan Millers Mutual Insurance Company (MMMIC) in two separate additional counts based on plaintiff's policy of insurance with MMMIC.

MMMIC moved for summary disposition under MCR 2.116(C)(10), arguing that there was no genuine issue of material fact that plaintiff had failed to show that he suffered a serious impairment of an important body function that affected his general ability to lead his normal life as required by MCL 500.3135. MMMIC argued that plaintiff had continued to work for several days after the April 28, 2016 motor vehicle accident and had been injured while shoveling gravel for his employer on May 10, 2016, which caused or aggravated the injuries to plaintiff's neck, back, and upper and lower extremities. MMMIC further argued that plaintiff had received worker's compensation for the May 10 injury and that he also had been diagnosed with underlying degenerative conditions that existed before the motor vehicle accident. Additionally, MMMIC argued that three independent medical examinations had shown that plaintiff only incurred soft tissue injuries. MMMIC contended that based on the conclusion that plaintiff had only suffered soft tissue injuries that should have resolved in six weeks, he did not suffer an objectively manifested impairment as a result of the motor vehicle accident. MMMIC also pointed out the conflicts between the conclusions of plaintiff's treating physicians and the independent medical examiners regarding the interpretation of plaintiff's imaging studies, and MMMIC essentially contended that the conclusions of the independent medical examiners were correct. Hayes concurred in MMMIC's motion for summary disposition.

In addition to the evidence already discussed above, MMMIC submitted medical records in its motion for summary disposition indicating that plaintiff presented to the emergency room in October 2007 for complaints of pain in his neck and radiating to his arm. At that time, it was determined that plaintiff had "[d]egenerative changes in the circle spine without evidence of an acute fracture or dislocation." MMMIC also submitted a redemption order dated February 15, 2018, and indicating that there had been an agreement for plaintiff to redeem his employer's entire worker's compensation liability based on injuries that plaintiff suffered on April 28, 2016, and May 10, 2016, that arose out of and in the course of his employment.

Plaintiff opposed the motion for summary disposition, arguing that he had demonstrated an objective impairment that was caused by the motor vehicle accident and was observable or

perceivable from actual symptoms or conditions. Specifically, plaintiff argued that he had suffered objective impairments to his lumbar spine, cervical spine, right shoulder, and left shoulder. Plaintiff relied on his medical records, diagnostic studies, and an affidavit by Mendelson. The affidavit by Mendelson was attached to plaintiff's response. Mendelson averred that he had treated plaintiff, that he had reviewed MRI images of plaintiff's shoulders and plaintiff's medical records, and that he concluded in his "expert[] medical opinion" that plaintiff had "suffered new injuries and/or aggravation of previous injuries due to the April 28, 2016, accident." Mendelson further averred that he had "rel[ied] on subjective and objective findings taken from before and after the April 28, 2016, motor vehicle accident. Additionally, Mendelson averred that plaintiff's right shoulder surgery was "necessitated by the April 28, 2016, accident" and that Mendelson "believe[d] to a reasonable degree of medical certainty that [plaintiff's] injuries were caused by the April 28, 2016, auto accident."

The trial court issued a written opinion and order granting MMMIC's motion for summary disposition without holding oral argument. The trial court based its decision on its conclusion that plaintiff could not demonstrate that his injuries were "evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function," as required by our Supreme Court in *McCormick v Carrier*, 487 Mich 180, 196; 795 NW2d 517 (2010), to show an objectively manifested impairment. The trial court reasoned:

> The Plaintiff must introduce evidence establishing that there is a physical basis for their subjective complaints of pain and suffering. In looking at the evidence in the light most favorable to the Plaintiff, the Court concludes that the Plaintiff has not submitted sufficient evidence to satisfy his burden relative to the first [*McCormick*] prong. Dr. Mendelson's affidavit has not created a question of fact on this issue because the medical records provided do not show that Plaintiffs subjective complaints of pain have a physical basis that resulted from the motor vehicle accident and Dr. Mendelson is not qualified to opine on causation in this instance. [Citation omitted.]

Other than the conclusory statement above, the trial court provided no explanation as to its finding that Dr. Mendelson was "not qualified to opinion on causation in this instance." Notably, the trial court did not issue a ruling on the second and third *McCormick* prongs.

The trial court dismissed the case with prejudice. Plaintiff now appeals.

## II. STANDARD OF REVIEW

This Court reviews the trial court's decision to grant a motion for summary disposition de novo. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). Under MCR 2.116(C)(10), summary disposition is appropriate if "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

If the moving party properly supports a motion under MCR 2.116(C)(10) with affidavits, depositions, admissions, or other documentary evidence supporting the party's assertion that no genuine issue of material fact exists, then the burden shifts to the nonmoving party opposing the motion "to establish that a genuine issue of disputed fact exists." *Barnard*, 285 Mich App at 369-370. In responding to a properly supported motion under MCR 2.116(C)(10), "an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial" and "[i]f the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her." MCR 2.116(G)(4); see also *Barnard Mfg*, 285 Mich App at 375-379, 381.

## III. ANALYSIS

Plaintiff argues on appeal that he produced evidence—in the form of medical records, diagnostic studies, and an affidavit by Mendelson—to create a genuine issue of material fact that he sustained an objectively manifested serious impairment of body function that was caused by the April 28, 2016 motor vehicle accident. Plaintiff specifically argues that resolution of the issue whether he suffered an objective impairment caused by the motor vehicle accident involves the conflicting opinions of medical experts.

Under MCL 500.3135(1), a "person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement."[1] Of these three types of threshold injury, only the "serious impairment of body function" standard is at issue in the present case. Pursuant to MCL 500.3135(5),[2]

---

[1] Plaintiff asserted negligence claim against Hayes. Claims seeking uninsured and underinsured motorist insurance coverage are predicated in part on an underlying third-party negligence claim against an at-fault driver. See *Rory v Continental Ins Co*, 473 Mich 457, 465; 703 NW2d 23 (2005); *Nickola v MIC Gen Ins Co*, 500 Mich 115, 122; 894 NW2d 552 (2017).

[2] MCL 500.3135(5) previously provided: "As used in this section, 'serious impairment of body function' means an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5), as amended by 2012 PA 158. In the body of our opinion, we have quoted the current version of this statutory provision that took effect after plaintiff initiated this action but before the trial court issued its summary disposition ruling in this case. See 2019 PA 21; 2019 PA 22. However, as is evident from our discussion of *McCormick* below, the language of the recently amended version of MCL 500.3135(5) merely reflects the *McCormick* Court's holding regarding the applicable standards for determining whether there was a serious impairment of body function. *McCormick* was decided in 2010 and we are undoubtedly bound by *McCormick* in resolving the instant case. Accordingly, we discern no substantive difference in also applying the current version of MCL 500.3135(5) considering its consistency with the holding in *McCormick*. Although we do not decide any potential retroactivity issues because they have not been formally presented or briefed by the parties on appeal, it appears that the current statutory language would apply in this case. See *In re Certified Questions from US Court of Appeals for the Sixth Circuit*, 416 Mich 558, 572; 331 NW2d

"serious impairment of body function" means an impairment that satisfies all of the following requirements:

(a) It is objectively manifested, meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person.

(b) It is an impairment of an important body function, which is a body function of great value, significance, or consequence to the injured person.

(c) It affects the injured person's general ability to lead his or her normal life, meaning it has had an influence on some of the person's capacity to live in his or her normal manner of living. Although temporal considerations may be relevant, there is no temporal requirement for how long an impairment must last. This examination is inherently fact and circumstance specific to each injured person, must be conducted on a case-by-case basis, and requires comparison of the injured person's life before and after the incident.

In *McCormick*, 487 Mich at 195, our Supreme Court held that the Legislature in MCL 500.3135 had set forth "three prongs that are necessary to establish a 'serious impairment of body function': (1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life."

Regarding the first prong, our Supreme Court held that the phrase "objectively manifested" means "an impairment that is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function," i.e. an impairment that is "observable or perceivable from actual symptoms or conditions." *Id*. at 196.

With respect to the second prong, a body function is "important" if it has "great value, significance, or consequence" to the injured person. *Id*. at 199 (quotation marks and citation omitted).

The *McCormick* Court explained the meaning of the third prong in relevant part as follows:

Therefore, the plain text of the statute and these definitions demonstrate that the common understanding of to "affect the person's ability to lead his or her normal life" is to have an influence on some of the person's capacity to live in his or her normal manner of living. By modifying "normal life" with "his or her," the Legislature indicated that this requires a subjective, person- and fact-specific inquiry that must be decided on a case-by-case basis. Determining the effect or

---

456 (1982) ("[R]etrospective application of a law is improper where the law takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a new disability with respect to transactions or considerations already past.") (quotation marks and citation omitted).

influence that the impairment has had on a plaintiff's ability to lead a normal life necessarily requires a comparison of the plaintiff's life before and after the incident.

There are several important points to note, however, with regard to this comparison. First, the statute merely requires that a person's general ability to lead his or her normal life has been *affected*, not destroyed. Thus, courts should consider not only whether the impairment has led the person to completely cease a pre-incident activity or lifestyle element, but also whether, although a person is able to lead his or her pre-incident normal life, the person's general ability to do so was nonetheless affected.

Second, and relatedly, "general" modifies "ability," not "affect" or "normal life." Thus, the plain language of the statute only requires that some of the person's ability to live in his or her normal manner of living has been affected, not that some of the person's normal manner of living has itself been affected. Thus, while the extent to which a person's general ability to live his or her normal life is affected by an impairment is undoubtedly related to what the person's normal manner of living is, there is no quantitative minimum as to the percentage of a person's normal manner of living that must be affected.

Third, and finally, the statute does not create an express temporal requirement as to how long an impairment must last in order to have an effect on "the person's general ability to live his or her normal life." To begin with, there is no such requirement in the plain language of the statute. Further, MCL 500.3135(1) provides that the threshold for liability is met "if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." While the Legislature required that a "serious disfigurement" be "permanent," it did not impose the same restriction on a "serious impairment of body function." [*McCormick*, 487 Mich at 202-203.]

In this case, although we glean from the trial court's ruling that its decision was founded on its conclusion that plaintiff had failed to create a genuine issue of material fact regarding the first *McCormick* prong, it is unclear from the trial court's explanation how it reached that conclusion. It appears that the trial court's conclusion rested entirely on its beliefs that (1) there was no evidence of a physical basis for plaintiff's complaints of pain and (2) there was no evidence that plaintiff's shoulder impairment for which he was treated by Mendelson was caused by the motor vehicle accident. The record reveals evidence, which if believed, would contradict these determinations by the trial court, thereby creating unresolved questions of fact.

With respect to the trial court's first reason, a serious impairment must be objectively manifested, meaning that it is "observable or perceivable from actual symptoms or conditions by someone other than the injured person." MCL 500.3135; see also *McCormick*, 487 Mich at 196. The trial court in this case seemingly ignored the extensive medical record evidence documenting plaintiff's various injuries to his cervical, thoracic, and lumbar spine, as well as his shoulders. The record contains evidence that plaintiff's treating physicians conducted physical examinations and imaging studies and that plaintiff was diagnosed with various conditions of the cervical, thoracic, and lumbar spine that included strains and straightening consistent with potential muscular spasms,

as well as a partial-thickness tear in his right rotator cuff. Plaintiff's shoulder issues prevented him from reaching high shelves, doing his usual work, and lifting more than 10 pounds. Thus, the record contains evidence supporting a conclusion that plaintiff suffered an objectively manifested impairment because there was evidence that plaintiff's claimed impairments to his neck, back, and shoulders were based on conditions that were observable or perceivable by plaintiff's doctors. MCL 500.3135; *McCormick*, 487 Mich at 196; see also *id*. (stating that the adjective "objective" is "defined specifically in the medical context as '[i]ndicating a symptom or condition perceived as a sign of disease by someone other than the person afflicted' ") (citation omitted; alteration in original).

Although MMMIC's medical experts apparently disagreed with various diagnoses and conclusions reached by plaintiff's doctors, conflicting evidence merely establishes a question of fact making summary disposition improper; the trial court is not permitted to weigh the evidence, make credibility determinations, or make findings of fact when deciding a summary disposition motion. *Patrick v Turkelson*, 322 Mich App 595, 605-606; 913 NW2d 369 (2018). The trial court's stated reasoning that plaintiff had not presented "sufficient" evidence to meet the first prong reflects the trial court's improper weighing of the evidence presented by the parties to justify its conclusion. *Id*.

Additionally, defendants' arguments that essentially amount to claiming that plaintiff's impairments were relatively minor "soft tissue" injuries that should have healed within six weeks reflect a misunderstanding of the applicable standards under *McCormick*. As an aside, we note that such arguments are more properly understood as belonging within the context of the third *McCormick* prong. Nevertheless, the Court in *McCormick* held that "the statute merely requires that a person's general ability to lead his or her normal life has been *affected*, not destroyed" and that "the statute does not create an express temporal requirement as to how long an impairment must last in order to have an effect on 'the person's general ability to live his or her normal life.' " *McCormick*, 487 Mich at 202, 203. Because the trial court did not make any ruling on the third *McCormick* prong, we decline to address these issues further at this juncture. "Appellate review is limited to issues actually decided by the trial court." *Allen v Keating*, 205 Mich App 560, 564; 517 NW2d 830 (1994).

Next, it appears that the trial court concluded that plaintiff had not produced sufficient evidence of causation linking an objective impairment to the motor vehicle accident. "Proximate causation is a required element of a negligence claim," and establishing proximate cause requires the plaintiff to "prove the existence of both cause in fact and legal cause." *Patrick*, 322 Mich App at 616 (quotation marks and citation omitted).

The trial court's ruling regarding causation appears to arise from its holding that there was no evidence that plaintiff's impairments actually resulted from the motor vehicle accident and that the trial court was thus referring to cause in fact.[3] "Establishing cause in fact requires the plaintiff

---

[3] We cannot discern from the trial court's opinion any indication that the trial court ruled that any of plaintiff's various claimed impairments were not foreseeable results of a motor vehicle accident. "To establish legal cause, the plaintiff must show that it was foreseeable that the defendant's

to present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Id*. at 617 (quotation marks and citation omitted). "Although causation cannot be established by mere speculation, a plaintiff's evidence of causation is sufficient at the summary disposition stage to create a question of fact for the jury if it establishes a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support." *Id*. (quotation marks and citation omitted).

Here, the trial court did not meaningfully attempt to address causation under the applicable legal standards. Instead, as previously stated, the trial court asserted that Mendelson was "not qualified to opine on causation in this instance" without giving any further explanation or providing any citation to legal authority supporting this reasoning.

Our review of the record reveals that plaintiff reported back pain at the scene of the April 28, 2016 motor vehicle accident. The record further reveals evidence that plaintiff had not experienced back or right shoulder pain before the April 28, 2016 motor vehicle accident and that he went to Oakwood Hospital on May 4, 2016, with complaints of neck and shoulder pain from the accident that had begun suddenly and that plaintiff associated with the motor vehicle accident. Records from this visit indicate that plaintiff's medical history was reviewed and that there was "[n]o pertinent past medical history." Notably, this May 4 visit occurred before the workplace incident involving shoveling. Plaintiff testified that the shoveling incident made his injuries worse, not that he did not have any injury before that incident.

In June 2016, Osta performed a physical examination of plaintiff when plaintiff complained of pain following a motor vehicle accident, and Osta diagnosed plaintiff with neck, thoracic, and lumbar sprains. Mendelson performed a surgical operation on plaintiff's shoulder to address a partial-thickness tear that had been diagnosed on the basis of an MRI. Mendelson opined in his affidavit that plaintiff's right shoulder injury was a new injury or the aggravation of previous injuries, which was the result of the April 28, 2016 motor vehicle accident. Mendelson had treated plaintiff's right shoulder and based his opinion in part on his review of plaintiff's medical records and findings from both before and after the accident. Mendelson's opinions were thus grounded on a factual evidentiary basis and were not mere hypothetical suppositions. See *Skinner v Square D Co*, 445 Mich 153, 173-174; 516 NW2d 475 (1994), overruled in part on other grounds by *Smith v Globe Life Ins Co*, 460 Mich 446, 455 n 2; 597 NW2d 28 (1999) ("[E]xpert opinion based upon only hypothetical situations is not enough to demonstrate a legitimate causal connection between a defect and injury," and "there must be facts in evidence to support the opinion testimony of an expert.") (quotation marks and citation omitted).

---

conduct may create a risk of harm to the victim, and . . . [that] the result of that conduct and intervening causes were foreseeable." *Patrick*, 322 Mich App at 617 (quotation marks and citation omitted; ellipsis and alteration in original). Accordingly, the trial court appears to have made no ruling regarding legal cause.

-10-

The evidence described above, viewed in a light most favorable to plaintiff as the nonmoving party, demonstrates a "logical sequence of cause and effect" between the motor vehicle accident and plaintiff's subsequent shoulder issues such that there was a genuine issue of material fact regarding but-for causation. *Patrick*, 322 Mich App at 617. Moreover, the evidence was not limited to a simple contention that plaintiff did not have shoulder pain before the accident but experienced shoulder pain after the accident; there was evidence that both plaintiff and Mendelson linked the shoulder issues to the accident. See *id*. at 619-620 (considering record evidence consisting of both the plaintiff's statements and medical evidence do determine whether there was a genuine issue of material fact regarding cause in fact). Thus, plaintiff presented evidence of more than a mere temporal relationship. *West v Gen Motors Corp*, 469 Mich 177, 186 & n 12; 665 NW2d 468 (2003) (stating that a temporal relationship by itself does not establish a causal connection). "[T]he plaintiff is not required to produce evidence that positively eliminates every other potential cause." *Skinner*, 445 Mich at 159.

Defendants' alternate theories that plaintiff merely suffered from preexisting degenerative conditions or that the shoveling incident was actually the sole cause of new or aggravated injury also have record support, but these conflicting theories merely illustrate the genuine questions of fact regarding causation that should properly be resolved by a jury. "Causation is an issue that is typically reserved for the trier of fact unless there is no dispute of material fact." *Patrick*, 322 Mich App at 616. Plaintiff could still potentially recover for impairments that constitute aggravations of preexisting conditions. *Wilkinson v Lee*, 463 Mich 388, 395; 617 NW2d 305, 308 (2000) ("Regardless of the preexisting condition, recovery is allowed if the trauma caused by the accident triggered symptoms from that condition."). Additionally, as previously noted, there is no requirement that a person's general ability to lead his or her normal life has been destroyed or that the impairment last for a specific length of time in order to establish a threshold injury. *McCormick*, 487 Mich at 202-203. Defendants' arguments ignore the conflicting evidence in the record regarding the cause of plaintiff's alleged impairments. Moreover, the trial court did not even consider whether there was a genuine issue of material fact regarding causation with respect to plaintiff's other alleged neck and back impairments.

In short, it appears that the trial court essentially based its summary disposition ruling on its own subjective assessment of the weight and strength of the parties' respective evidence, contrary to the governing standards for deciding a summary disposition motion. *Allison*, 481 Mich at 425; *Patrick*, 322 Mich App at 605-606. We therefore reverse.

Reversed and remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction. Plaintiff having prevailed may tax costs. MCR 7.219.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Brock A. Swartzle